IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FEDERAL NATIONAL MORTGAGE ASSOCIATION**,<br><br>Plaintiff,<br><br>v.<br><br>**NB THE VILLAGE AT GRESHAM, LLC**,<br><br>Defendant. | Case No. 3:25-cv-00055-IM<br><br>**OPINION AND ORDER DENYING FANNIE MAE'S MOTION FOR APPOINTMENT OF RECEIVER** |

Holly C. Hayman, Farleigh Wada Witt, 121 SW Morrison Street, Suite 600, Portland, OR 97204; Daniel S. Dooley, Polsinelli PC, 900 West 48th Place, Suite 900, Kansas City, MO 64112. Attorneys for Plaintiffs.

Garrett S. Ledgerwood & Jackson J. Tann, Miller Nash LLP, 1140 SW Washington St., Suite 700, Portland, OR 97205. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff Federal National Mortgage Association ("Fannie Mae") is the current owner of a loan made to Defendant NB the Village at Gresham, LLC ("Defendant"). Fannie Mae sued Defendant for breach of the loan documents, requesting the appointment of a receiver and judicial foreclosure in its Complaint. Compl., ECF 1 ¶¶ 51–85. Now before this Court is Fannie

PAGE 1 – OPINION AND ORDER DENYING FANNIE MAE'S MOTION FOR APPOINTMENT OF RECEIVER

Mae's Motion for Appointment of Receiver ("Mot."), ECF 16. Defendant opposes the Motion. Opp'n, ECF 22. For the reasons explained below, this Court denies Fannie Mae's Motion.

## BACKGROUND

In 2019, Defendant borrowed nearly $14.5 million from Greystone Servicing Company LLC ("Greystone") as part of a mortgage loan transaction for much of Campbell Park, a condominium complex ("the property"). Declaration of Sean Keys ("Keys Decl."), ECF 23 ¶¶ 2–3; Declaration of Matt Trent ("Trent Decl."), Exs. A–D, ECF 19-1–19-4. The loan is secured by a lien, which encumbers the real property, rents, and other property related to Campbell Park. Trent Decl., ECF 19 ¶ 8 (citing *id.* Ex. B, ECF 19-2). The loan is almost entirely nonrecourse, meaning the property is often the only asset from which Defendant must repay the loan. *Id.* ¶ 9. The same day as the transaction, Greystone assigned its interest in the loan to Fannie Mae. *Id.* ¶ 16 (citing *id.* Ex. E, ECF 19-5). Greystone still services the loan for Fannie Mae. *Id.* ¶ 2.

Four years later, in 2023, Fannie Mae inspected Campbell Park and engaged a third party to assess the property. *Id.* ¶ 24 (citing *id.* Ex. G, ECF 19-7). The third party surveyed the property in November 2023 and prepared a property condition assessment ("PCA"). *See generally id.* Ex. G, ECF 19-7. In December 2023, Greystone sent Defendant a demand notice and attached the PCA and a schedule of repairs. *Id.* Greystone asserted that Defendant failed to maintain the property under the Loan Agreement and demanded Defendant deposit funds to cover costs for the requested replacements. *Id.* at 2–3. Greystone asserted that the failure to maintain may constitute an event of default and that failure to deposit the required amount is an event of default under the loan documents. *Id.*

The PCA noted six critical and life safety repairs recommended for completion within six months: replacing outlets, remediating mold, replacing faucets, repairing sidewalks, and replacing windows. *Id.* at 19. Most notably, the property had known elevated lead content since

PAGE 2 – OPINION AND ORDER DENYING FANNIE MAE'S MOTION FOR APPOINTMENT OF RECEIVER

2022. *Id.* at 16. The PCA suggested that the faucets were the likely source of contamination. *Id.* at 17. Four condominium units tested positive for elevated lead levels. *Id.* at 16. The PCA advised Defendant to replace those faucets and retest for lead. *Id.* at 17. If all four units tested negative, the PCA directed Defendant to replace the faucets in the remaining 134 units. *Id.* Greystone demanded Defendant immediately take corrective action to undertake all repairs or replacements noted in the PCA. *Id.* at 3. For the deposits, Greystone required Defendant to deposit $1.4 million into the Replacement Reserve Account within 30 days and noted that failure to deposit the required amount is an event of default under the loan documents. *Id.*

After the December 2023 demand, Defendant took some corrective action. Defendant hired a plumber to evaluate the plumbing system for sources of lead contamination. Keys Decl., ECF 23 ¶¶ 5–7. Based on the plumber's findings, Defendant disputed the scope of necessary repairs in February 2024. *Id.* Ex. 3, ECF 23 at 24–25. Defendant replaced all the outlets the PCA identified as life safety repairs, Keys Decl., ECF 23 ¶ 10, and Defendant had the water retested and the faucets replaced in the four units with elevated lead levels.[1] *Id.* ¶ 7.

In June 2024, Fannie Mae sent Defendant a second demand notice stating that Defendant failed to satisfactorily respond to the December 2023 demand. Trent Decl., ECF 19 ¶¶ 29–30 (citing *id.* Ex. H, ECF 19-8). Fannie Mae repeated the demands from the December 2023 notice but reduced the deposit amount from over $1.4 million to under $370,000. *Id.* Ex. H, ECF 19-8 at 2. Defendant remediated the mold in August 2024, and Greystar was then advised that all the life safety repairs were completed. Keys Decl., ECF 23 ¶ 10. At the time of this motion,

---

[1] Defendant does not specify whether it replaced the faucets before or after Fannie Mae's June 2024 demand. Keys Decl., ECF 23 ¶¶ 5–7. The faucets were replaced no later than July 1, 2024. *Id.* ¶ 8; *Id.* Ex. 4, ECF 23 at 27.

PAGE 3 – OPINION AND ORDER DENYING FANNIE MAE'S MOTION FOR APPOINTMENT OF RECEIVER

Defendant has not made the requested deposit of roughly $370,000. Declaration of Ishan Patel ("Patel Decl."), ECF 17 ¶ 8.

On August 13, 2024, Fannie Mae sent Defendant a notice of default, acceleration, and demand for full payment. Trent Decl., ECF 19 ¶ 31 (citing *id.* Ex. I, ECF 19-9). Fannie Mae asserted that Defendant's failure to maintain the property or adequately respond to the demand notices were events of default under the loan documents. *Id.* Ex. I, ECF 19-9 at 1–2. Fannie Mae accelerated the loan and demanded over $13.5 million in payment within 14 days. *Id.* at 2.

In September 2024, the parties entered a prenegotiation letter for the defaulted loan. Trent Decl., ECF 19 ¶ 32 (citing *id.* Ex. J, ECF 19-10). Defendant attempted to negotiate with Fannie Mae in October and November 2024. Keys Decl., ECF 23 ¶¶ 13–14. Fannie Mae filed this action in January 2025. Compl., ECF 1. Fannie Mae's Complaint lists three claims for relief: appointment of receiver, breach of contract, and judicial foreclosure. Compl., ECF 1 ¶¶ 51–85. As of July 31, 2025, the total amount owed under the Loan, exclusive of attorney fees and costs was $15.3 million. Patel Decl., ECF 17 ¶ 7. Fannie Mae now moves to appoint a receiver. Mot., ECF 16. Defendant opposes the motion. Opp'n, ECF 22. Following Fannie Mae's motion, Defendant has listed the property for sale. Keys Decl., ECF 23 ¶ 15. The property is valued between $16 million to $18 million. *Id.*

## STANDARDS

The appointment of a receiver is an "extraordinary equitable remedy" and "should be applied with caution." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (citation modified) (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)); *see also Solis v. Matheson*, 563 F.3d 425, 437 (9th Cir. 2009) ("[T]he appointment of a receiver is considered to be an extraordinary remedy that should be employed

with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property." (citation modified)).

Pursuant to Federal Rule of Civil Procedure 66, "federal law governs the issue of whether to appoint a receiver in a diversity action." *Canada Life*, 563 F.3d at 843. Rule 66 provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. A "district court has broad discretion in appointing a receiver," and there is "no precise formula." *Canada Life*, 563 F.3d at 845. Consent to the appointment of a receiver "is a factor that commands great weight, but it is not dispositive." *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1260 (D. Or. 2009).[2] District courts "may consider a host of relevant factors, and that no one factor is dispositive." *Canada Life*, 563 F.3d at 845. In *Canada Life*, the Ninth Circuit identified at least seven equitable factors:

> (1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to [the moving party] by denial of the appointment would outweigh injury to the party opposing appointment; (6) the [moving party's] probable success in the action and the possibility of irreparable injury to [that party's] interest in the property; and, (7) whether [the moving party's] interests sought to be protected will in fact be well-served by receivership.

*Id*. at 844 (citation modified).

---

[2] *See also California Bank & Tr. v. Shilo Inn*, No. 1:12-CV-00141-CWD, 2012 WL 1883474, at *5 (D. Idaho May 22, 2012) ("The Court will consider the provision in the Deeds of Trust as one factor in addition to the *Canada Life* factors."); *Compass Bank v. Baraka Holdings, LLC*, No. CV-17-06563-AB (RAOx), 2017 WL 10378348, at *3 (C.D. Cal. Oct. 26, 2017) ("[T]he Court is not persuaded that Plaintiffs are entitled to appointment of a receiver merely because the loan agreements provide for one.").

PAGE 5 – OPINION AND ORDER DENYING FANNIE MAE'S MOTION FOR APPOINTMENT OF RECEIVER

## DISCUSSION

This Court finds Fannie Mae has not met its burden to demonstrate that appointing a receiver is warranted. Although the Loan Agreement provides for appointment of a receiver in the event of Defendant's default, the other *Canada Life* equitable factors outweigh appointment of a receiver at this time.

**A. Consent to Appointment of Receiver in the Loan Agreement Not Dispositive**

Defendant's contractual consent to receivership in the Loan Agreement is conditioned on Defendant's default.[3] This Court finds that there is evidence that Defendant is in default for failing to timely perform requested repairs and failing to make deposits required under the Loan Agreement. This Court weighs Defendant's contractual consent in favor of appointment of a receiver based on the evidence presented at this stage.

**1. Requested Repairs**

Fannie Mae presented evidence that Defendant is in default under the Loan Agreement for failing to complete all the requested repairs within the required time period. Section 6.02(b)(3) of the Loan Agreement provides that Defendant shall commence repairs or replacements that Fannie Mae requires "in accordance with [Fannie Mae]'s timelines, or if no timelines are provided, as soon as practical." Trent Decl. Ex. C, ECF 19-3 at 35. In December 2023, Fannie Mae demanded that Defendant make all the repairs in the PCA. Trent Decl. Ex. G, ECF 19-7 at 3. The PCA noted six critical and life safety repairs recommended for completion within six months: replacing outlets, remediating mold, replacing faucets, repairing sidewalks,

---

[3] *See* Trent Decl. Ex. B, ECF 19-2 at 11 ("If Lender elects to seek the appointment of a receiver for the Mortgaged Property *at any time after an Event of Default has occurred and is continuing*, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver." (emphasis added)).

and replacing windows. *Id.* at 19. Defendant asserts that it completed the life safety repairs—replacing outlets and remediating mold—and took steps to remediate lead in the drinking water by August 2024. Keys Decl., ECF 23 ¶¶ 7, 10. However, Defendant does not address the other required repairs—replacing laundry room windows and repairing sidewalks. Based on the current record, it appears that those other required repairs were likely not completed by June 2024. Because there are at least some repairs that do not appear to have been completed within the specified time period, this Court finds that Fannie Mae has presented evidence that suggests Defendant is in default for failing to make timely required repairs.

### 2. Required Deposits

Fannie Mae has also presented evidence that Defendant is in default by failing to pay the replacement reserve deposits requested by Fannie Mae. Section 13.02(a)(4) of the Loan Agreement provides in part:

> (4) Insufficient Funds.
>
> Lender may, upon thirty (30) days' prior written notice to Borrower, require an additional deposit(s) to the Replacement Reserve Account. . . , if Lender determines that the amounts on deposit in any of the Reserve/Escrow Accounts are not sufficient to cover the costs for . . . Additional Lender Replacements.

Trent Decl. Ex. C, 19-3 at 73. Here, in both notices, Fannie Mae requested additional deposits be made within 30 days. Trent Decl. Ex. G, ECF 19-7 at 3; *id.* Ex. H, ECF 19-8 at 2. The Loan Agreement gives Fannie Mae the power to determine whether existing deposits are sufficient and *require* additional deposits if they are not. Analyzing this same provision in a nearly identical contract with Fannie Mae, the Nevada Supreme Court found that the borrower's failure to pay the required amount was a breach of the agreement. *Fed. Nat'l Mortg. Ass'n v. Westland Liberty Vill., LLC*, 515 P.3d 329, 335 (Nev. 2022) ("[Fannie Mae] may require additional deposits under section 13.02(a)(4). . . . If [the defendant] fails to pay any required amount, that is a default.")

PAGE 7 – OPINION AND ORDER DENYING FANNIE MAE'S MOTION FOR APPOINTMENT OF RECEIVER

This Court finds that the same logic applies in this case. Here, Defendant did not pay any of the deposit requested in June 2024. Patel Decl., ECF 17 ¶ 8. True, Defendant disputed some portion of the repairs and deposit from December, *see* Keys Decl. Ex. 3, ECF 23 at 24–25, but Defendant conceded some deposits needed to be made. *See id.* at 25 ("We are in agreement that some repairs will need to be completed at the site and the deposits necessary to complete those repairs will need to be identified and made.").Defendant has not provided evidence that these deposits were paid or otherwise excused.

Based on the evidence presented, it appears that Fannie Mae gave adequate notice before requiring the additional deposits. The notice gave Defendants 30 days to make the required deposits and specified that failure to pay would be a violation of the Loan Agreement. The notice followed the minimum 30-day timeframe in the Loan Agreement and alerted Defendant that Fannie Mae considered failure to act to constitute a breach of the Loan Agreement. Trent Decl. Ex. H, ECF 19-8 at 2 ("Failure to deposit the required amount . . . will be an Event of Default under the Loan Documents."). Defendant now implies that the notice is deficient for not citing the Loan Agreement provision that requires Defendant to make additional deposits. *See* Opp'n, ECF 22 at 8–10. Defendant, however, cites no authority that Fannie Mae's notice must cite the specific provision, and Defendant did not contest Fannie Mae's ability to require deposits in its February 2024 correspondence. *See* Keys Decl. Ex. 3, ECF 23 at 25 ("We are in agreement that some repairs will need to be completed at the site and the deposits necessary to complete those repairs will need to be identified and made.") The evidence suggests that Defendant was on notice of the required deposits, but failed to make any deposits.

On this limited record, Plaintiff has presented evidence that Defendant breached the Loan Agreement but, at this early stage, this Court is unable to make a finding that Defendant

definitively breached the Loan Agreement by failing to make repairs and pay the required deposits within the timeframe specified in Fannie Mae's notices.

### B. *Canada Life* Factors

On balance, the seven factors the Ninth Circuit set forth in *Canada Life* outweighs Defendant's contractual consent to appointment of a receiver. *See Canada Life*, 563 F.3d at 844. The Court addresses each factor in turn.

1. **Whether the party seeking appointment has a valid claim**

Fannie Mae has presented evidence that it has a valid claim. For the reasons explained above, Defendant appears to have breached the Loan Agreement by failing to make timely repairs and deposits. Defendant alleges that Fannie Mae accelerated the loan in bad faith because Defendant had not breached the Loan Agreement, Opp'n, ECF 22 at 2. At this early stage, this Court cannot definitively find that Defendant *has* breached the Loan Agreement. Defendant may ultimately be able to demonstrate that Fannie Mae accelerated the loan or took other action in bad faith. At this stage, this Court finds that this factor is neutral.

2. **Whether there is fraudulent conduct or the probability of fraudulent conduct**

The parties agree that there is no fraudulent conduct. Mot., ECF 16 at 18; Opp'n, ECF 22 at 11. This factor is neutral.

3. **Whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered**

There is no evidence that the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered, *see Compass Bank*, 2017 WL 10378348, at *5. As discussed above, Defendant may have failed to make timely deposits, repair damaged sidewalks, and replace damaged windows. But the evidence also shows that Defendant has completed all

the life-safety repairs and worked with the City of Gresham to keep renting units. Keys Decl., ECF 23 ¶ 10; *id.* Ex. 3 at 25. Fannie Mae has not provided any evidence that the value of the property is declining or that any decline is due to Defendant's neglect of the property. This Court is not persuaded that the property is in imminent danger. This factor weighs against receivership.

### 4. Whether legal remedies are inadequate

Fannie Mae's legal remedies under the contract include foreclosure and the right to collect income generated from the property. Mot., ECF 16 at 20. This Court is not persuaded that those legal remedies are insufficient to protect Fannie Mae's interest in the property. Fannie Mae argues that Defendant's incentive to remedy defaults "has vanished" if Defendant is now determined to sell the Property. Reply, ECF 25 at 10. Here, the evidence shows that the property is valued between $16 and $18 million, exceeding the amount owed on the loan. Keys Decl., ECF 23 ¶ 15. The Court is not persuaded that Defendant has no economic incentive to preserve the value of the property. Because of the current value of the property exceeds the amount owed on the loan, this Court is not persuaded that Fannie Mae's legal remedies are inadequate. This favor weighs against appointing a receiver.

### 5. Whether the harm by denial of the appointment would outweigh injury to the party opposing appointment

Fannie Mae argues that there can be no injury to appointing a receiver where the other party consented to receivership. Mot., ECF 16 at 19–20 (citing *Greystone Bank v. Tavarez,* No. 09-CV-5192, 2010 WL 11651639, at *2 (E.D.N.Y. Apr. 26, 2010) (observing that "[t]here is little hardship in enforcing the terms of the parties' bargain" such as by appointing a contractually-agreed receiver during the pendency of the foreclosure action)). This Court is not persuaded that there is no harm to Defendant in appointing a receiver. Defendant argues that

appointing a receiver would increase the amount owing on the loan. Opp'n, ECF 22 at 2–3. In contrast, this Court does not find that Fannie Maw would suffer any injury from failing to appoint a receiver at this time. Fannie Mae has not shown that the amount owed exceeds the value of the property or that the value of the property is in imminent danger. There is a possibility of harm to Fannie Mae, but it "has not submitted sufficient evidence to show that it would suffer harm if a receiver is not appointed." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1264; *see also Compass Bank*, 2017 WL 10378348, at *6 (comparing the "extreme prejudice" to borrower to "the lack of evidence that [lender] will suffer prejudice *without* a receiver"). This factor weighs against receivership.

6. **Probability of success in the action and possibility of irreparable injury to proponent's interest**

Fannie Mae has produced evidence suggesting Defendant breached the Loan Agreement, but Fannie Mae has not shown irreparable injury to its interest. The evidence presented so far shows that Defendant has taken steps to maintain the property. *See e.g.*, Keys Decl., ECF 23 ¶ 10. Defendant has addressed all the life-safety repairs identified by Fannie Mae and taken the proposed steps to further remediate lead in the property's water. *Id.* ¶¶ 5–7, 10. On the facts before this Court, this factor weighs against appointing a receiver.

7. **Whether proponent's interest sought to be protected will in fact be well-served by receivership**

Fannie Mae has an interest in the property, but, on this record, it has not met its burden to show that the "interest is unprotected and that a receiver is necessary to protect it." *Sterling Sav. Bank*, 656 F. Supp. 2d at 1264. Fannie Mae has not sufficiently demonstrated that Defendant is

not properly managing the property, or that the proposed receiver would be better able to operate and manage the property. This factor weighs against appointment.

## CONCLUSION

For the foregoing reasons and based on the limited record presented, Fannie Mae's Motion for Appointment of Receiver, ECF 16, is DENIED with leave to refile if circumstances change or have changed since Fannie Mae filed the Motion. Based on the evidence presented, the Court DENIES Defendant's request to award fees and costs for opposing Fannie Mae's Motion.

**IT IS SO ORDERED**.

DATED this 30th day of January, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge